O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVOLUTION EYEWEAR, INC. a California corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>ASPEX EYEWEAR, INC., a Delware Corporation; and THIERY IFERGAN, an individual,<br><br>          Defendants. | Case No. CV 02-1087-VAP (CWx)<br><br>**[Motion filed on May 27, 2008]**<br><br>**ORDER DENYING MOTION FOR STAY** |

    Counterclaim Defendant's Motion for Stay of Execution of Judgment came before the Court for hearing on July 14, 2008.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court DENIES the Motion.

## I. BACKGROUND

    On April 30, 2007, the Court granted Counterclaimant Contour Optik, Inc.'s ("Contour") Motion for Partial

Summary Judgment on the issue of Infringement, holding that Counterclaim Defendant Revolution Eyewear, Inc. ("Revolution") infringed Claim 22 of Contour's Patent No. RE37,545 ("'545 Patent"). (<u>See</u> Order Granting Counterclaimant's Motion for Summary Judgment on Infringement, April 30, 2007 ("Infringement MSJ Order").) On the same day, the Court denied Revolution's Motion for Partial Summary Judgment on the issue of invalidity, holding that Revolution had failed to establish that Claim 22 was invalid. (<u>See</u> Order Denying Counter-Defendant's Motion for Summary Judgment of Invalidity, April 30, 2007 ("Invalidity MSJ Order").)

    This case was tried to a jury on September 18, 19, 20 and 21, 2007, on Contour's claim for damages for patent infringement against Revolution. The jury returned a verdict awarding damages of $4,319,530.70 to Contour on September 21, 2007.

    After trial, the parties submitted briefs on Revolution's intervening rights defenses. On January 3, 2008, the Court issued a Memorandum and Opinion on Equitable Issues, Findings of Fact and Conclusions of Law ("Op. of January 3, 2008"), concluding that Revolution was entitled to absolute intervening rights and reducing the damages awarded by the jury by $125,964. Accordingly, on February 25, 2008, the Court issued a

Judgment in favor of Contour awarding damages of $4,193,567.  On April 24, 2008, the Court denied Revolution's motions for judgment as a matter of law, for new trial, and for remittitur.  (See Order Denying Motion for Judgment as a Matter of Law, for New Trial, and for Remittitur, April 24, 2008 ("Remittitur Order").)

On May 27, 2008, Revolution filed this Motion for Stay of Execution of Judgment Pending Appeal ("Mot."). Revolution challenges the results of the Invalidity MSJ Order, the Infringement MSJ Order, and the Remittitur Order.  Contour filed an Opposition ("Opp'n") on June 9, 2008.  On June 16, 2008, Revolution filed a Reply.

## II. LEGAL STANDARD

"Stays of monetary judgments are ordinarily sought under either Fed. R. Civ. P. 62(d) or 62(f)." Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 17 (1st Cir. 2002). An appellant may obtain a stay as a matter of right by filing a supersedeas bond.  Fed. R. Civ. P. 62(d).  In lieu of a supersedeas bond, a court may allow an appellant to post alternate forms of security.  See Townsend v. Holman Consulting Corp, 929 F.2d 1503, 1505 n.1 (9th Cir. 1987).

A court also has discretion to stay execution of a judgment pending appeal in unusual circumstances without

requiring a bond.  See Lightfoot v. Walker, 797 F.2d 505, 506 (7th Cir. 1986).  In deciding whether to grant an unsecured stay, a court evaluates whether either (1) "[the] defendant's ability to pay is so plain that the cost of the bond would be a waste of money" or (2) "the requirement would put the defendant's other creditors in undue jeopardy."  Olympia Equip. v. W. Union Tel. Co., 786 F.2d 7894, 796 (7th Cir. 1986).

Here, however, Revolution makes no mention of Rule 62 or of a supersedeas bond, and makes no attempt to show that it is entitled to an unsecured stay under the factors set forth in Olympia Equipment.  Instead, both parties urge the Court to apply a four-factor test set forth by the Supreme Court in Hilton v. Braunskill.  (See Mot. at 3; Opp'n at 1.)

In Hilton, the Supreme Court considered whether to stay release of a prisoner who had prevailed in a habeas corpus petition, pending appeal of the district court's order.  The Court stated

> Under both [Federal Rule of Civil Procedure 62(c) and Federal Rule of Appellate Procedure 8(a)], the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

> interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987).

These four factors thus apply to a determination of whether to grant a stay under Rule 62(c), which governs requests to stay or modify an injunction pending appeal. See Fed. R. Civ. P. 62(c). Here, however, Revolution requests a stay of a judgment of monetary damages, not a stay of an injunction.[1] It is not clear that the four factors listed in Hilton apply to such a request.

Many authorities treat the four Hilton factors as considerations to be applied solely to requests to stay injunctions. See, e.g., Honeywell Intern., Inc. v. Universal Avionics Systems Corp., 397 F. Supp. 2d 537, 548 (D. Del. 2005) (stating the four-factor test is the standard for modifying injunctions under Rule 62(c)); Digital Communications Network, Inc. v. AB Cellular Holding LLC, 1999 WL 1044234, at *3 (C.D. Cal. 1999) (same); Magnesystems, Inc. v. Nikken, Inc., 1994 WL

---

[1] The judgment in this case imposed both monetary damages and an injunction. (See J., filed February 27, 2007.) Revolution seeks an order staying execution of the entire judgment. Its arguments, however, are limited solely to the damages portion of the judgment. Indeed, it contends that the injunction is moot, as it has stopped manufacturing and selling the infringing product. (See Mot. at 18.)

808421, at *4 (C.D. Cal. 1994) (same); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 2904 (same). Indeed, in a case similar to this one, where the judgment imposed both monetary damages and an injunction, the court applied the Hilton factors only to the injunction portion of the judgment. See In re Hayes Microcomputer Products, Inc. Patent Litigation, 766 F. Supp. 818, 822, 829-30 (N.D. Cal. 1991) (staying the injunction but leaving unaffected the monetary damages award).

Some cases, however, have applied the Hilton factors in the context of a request for stay of a monetary judgment under Rule 62(d). In Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd., the court held that a defendant is entitled to a stay under Rule 62(d), even with a supersedeas bond, only if it first establishes entitlement to a stay under the Hilton factors. See 932 F. Supp. 1147, 1148 (S.D. Ind. 1996). In L.E.A. Dynatech, Inc. v. Allina, the court treated the two tests as alternatives, holding that if an appellant cannot obtain a supersedeas bond and thus is not entitled to a stay under Rule 62(d), then alternately it can establish entitlement to a stay under the Hilton factors. 1994 WL 732001, at *1-*2 (Fed. Cir. 1994).
///
///

6

1   Other courts consider the four <u>Hilton</u> factors when
2 deciding whether to grant a stay under Rule 62(d) without
3 a supersedeas bond.  See <u>Association of Holocaust Victims</u>
4 <u>for Restitution of Artwork and Masterpieces v. Bank</u>
5 <u>Austria Creditanstalt AG</u>, 2005 WL 3099592 (S.D. N.Y.
6 2005).  This approach, however, cannot be reconciled with
7 the Seventh Circuit approach of granting an unsecured
8 stay under Rule 62(d) only upon a showing of plain
9 ability to pay or jeopardy to defendant's creditors.  <u>See</u>
10 <u>Olympia Equip</u>, 786 F.2d at 796.
11
12   The First Circuit has considered the tension between
13 Rule 62(d) and the <u>Hilton</u> factors, and has concluded that
14 stays of monetary judgments are evaluated under Rule
15 62(d), while stays of injunctive orders are evaluated
16 using the <u>Hilton</u> factors.  <u>See</u> <u>Acevedo-Garcia</u>, 296 F.3d
17 13, 16-17.  In a footnote, however, the <u>Acevedo-Garcia</u>
18 court conceded that "[i]t is at least arguable that a
19 monetary judgment may also be stayed under the [<u>Hilton</u>
20 factors]."  <u>Id.</u> at 17 n. 4.
21
22   The Federal Circuit has stated that the four factors
23 "always guide [its] discretion to issue a stay pending
24 appeal."  <u>Standard Havens Products, Inc. v. Gencor</u>
25 <u>Industries Inc.</u>, 897 F.2d 511, 512 (Fed. Cir. 1990).  In
26 <u>Standard Havens</u>, the court applied the <u>Hilton</u> factors to
27 a request to stay execution of a judgment imposing both
28

7

monetary damages and an injunction.  <u>Id.</u> at 515-16.  In at least one other case, however, the Federal Circuit indicates that if an appellant is entitled to a stay under Rule 62(d), then it need not establish entitlement to a stay under the <u>Hilton</u> factors.  <u>See</u> <u>L.E.A. Dynatech, Inc.</u>, 1994 WL 732001, at *1-*2.

Here, the Court need not decide whether Rule 62(d) or the <u>Hilton</u> factors, or both, state the appropriate test for deciding whether to stay execution of a monetary judgment, because Revolution has failed to establish entitlement to a stay under either standard.  Revolution did not argue that it is entitled to a stay under Rule 62(d), with or without a bond.  Nor did it present evidence that would entitle it to an unsecured Rule 62(d) stay.  <u>See</u> <u>Olympia Equip.</u>, 786 F.2d at 796 (listing factors for granting the motion without a bond).  Additionally, as explained below, Revolution has failed to establish that it is entitled to a stay under the <u>Hilton</u> factors.

**III. DISCUSSION**

**A.  Likelihood of Success on the Merits**

Revolution challenges the denial of its motion for summary judgment on invalidity, the grant of Contour's motion for summary judgment on infringement, and the amount of the jury award.  It offers five bases for

8

overturning these results on appeal: (1) Claim 22 is invalid because it fails to comply with 35 U.S.C. § 112 ¶ 1; (2) Claim 22 is invalid because it fails to comply with 35 U.S.C. § 112 ¶ 2; (3) Claim 22 is invalid because it fails to comply with 35 U.S.C. § 251; (4) Revolution did not infringe Claim 22; and (5) the damages award was excessive and not supported by the evidence. (Mot. at 4.)

Claim 22 of the '545 Patent claims:

> An eyeglass device comprising:
> a primary spectacle frame for supporting primary lenses therein and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections, said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle are located in front of said primary lenses.

(See Infringement MSJ Order at 5.)

**1.  Invalidity Under 35 U.S.C. § 112 ¶ 2**

Section 112 ¶ 1 provides,

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains,

9

```
                or   with   which   it   is   most   nearly
           connected, to make and use the same, and
           shall   set   forth   the   best   mode
           contemplated by the inventor of carrying
           out his invention.
```

35 U.S.C. § 112 ¶ 1.

Here, Revolution argues that Claim 22 of the '545 Patent fails to comply with the requirements of § 112 ¶ 1 because it exceeds the scope of the written description. (Mot. at 4.) Specifically, it contends that Claim 22 is impermissibly broad, because, as construed by the Court, it is not limited to configurations where the primary frame stably supports the auxiliary frame. (Mot. at 2, 4-8.) Revolution argues that the written description consistently limited the invention to a configuration of a primary eyeglass frame that stably supports the auxiliary frame. (Mot. at 8.)

Revolution cites <u>Gentry Galley v. Berkline Corp.</u>, in which the Federal Circuit held invalid a claim that exceeded the scope of the patent's written description. <u>See</u> 134 F.3d 1473, 1479 (Fed. Cir. 1998). In <u>Gentry</u>, the patent specification described reclining seats of a sectional sofa with recliner controls located on a central console, eliminating the need to position recliners at the exposed ends of sofas. <u>Id.</u> at 1474. The Federal Circuit held invalid claims that did not limit the location of recliner controls to a central

10

1  console.  Id. at 1479.  It explained "locating the
2  controls anywhere but on the console is outside the
3  stated purpose of the invention."  Id.
4
5       Here, the '545 Patent addresses two problems:
6  previous designs failed to "stably support" the auxiliary
7  frame on the primary frame, and previous designs suffered
8  a "great[] decrease" in primary frame strength, caused by
9  embedding magnetic materials directly in the primary
10 frame.  (Invalidity MSJ Order at 22 (quoting '545 Patent,
11 col. 1, II. 33-37).) While Claim 22 was not directed to
12 solving the first problem of stable support, it was
13 directed to solving the second problem of decreased
14 strength.  The written description solves the decreased
15 strength problem by housing magnetic members in
16 projections extending from the rear and side portions of
17 the primary frame's side extensions.  (Id. at 22-23); see
18 '545 Patent, col. 1, 11. 55-62.
19
20      Thus, unlike the claims invalidated in Gentry, Claim
21 22 addresses a problem within a stated purpose of the
22 '545 Patent.  Cf. Gentry, 134 F.3d at 1479 (invalidating
23 claims "outside the stated purpose of the invention").
24 Moreover, on its face, the written description of the
25 '545 patent supports Claim 22, by disclosing *both* a novel
26 auxiliary frame *and* a novel primary frame, each of which
27 ///
28

11

1 addresses a different problem identified in the
2 specification. (See Invalidity MSJ Order at 23 n.28.)

4     As the Court held in its Invalidity MSJ Order,
5 Revolution has not met its burden of establishing that
6 Claim 22 exceeds the scope of the written description of
7 the '545 patent. Revolution has failed to present any
8 arguments not considered in the Invalidity MSJ Order, or
9 to identify any errors in the Court's reasoning.
10 Accordingly, it has not shown a likelihood of success on
11 its appeal on the basis of violation of § 112 ¶ 1.

13     **2. Definiteness**
14     Section 112 ¶ 2 provides,

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

18 35 U.S.C. § 112 ¶ 2.

20     Revolution argues that Claim 22 is invalid under §
21 112 ¶ 2 because it is directed only to the primary frame,
22 which is not "what the applicant regarded as his
23 invention." (Mot. at 9.) In its Invalidity MSJ Order,
24 the Court held that Revolution had "expressly abandoned
25 this argument." (Invalidity MSJ Order at 25.) Now,
26 Revolution argues that it did not abandon the argument,
27 (Mot. at 8-10.), despite its earlier statement that

"Revolution does not allege that the claim is indefinite under § 112, ¶ 2." (See Invalidity MSJ Order at 25 n. 30.)

Even assuming it did not expressly abandon its indefiniteness argument, Revolution has failed to establish that it is likely to succeed on this issue on appeal. Indeed, in its Motion, Revolution does not argue that Claim 22 violates § 112 ¶ 2 as indefinite. Instead, under a heading purporting to introduce an argument about definiteness and § 112 ¶ 2, it again argues that Claim 22 exceeds the scope of the patent's written description. (See Mot. at 8-10.) For instance, it cites In re Kaslow, 707 F.2d 1366, 1375 (Fed. Cir. 1983), where the Federal Circuit discusses the written description requirement of § 112 ¶ 1. For the reasons explained above at § A.1, Revolution has not demonstrated it is likely to succeed in its argument that Claim 22 violates § 112 ¶ 1.

### 3. 35 U.S.C. § 251

Section 251 provides for the reissue of patents, and limits such reissued patents to matter disclosed in the original patent. 35 U.S.C. § 251. Thus, claims in a reissue patent may not exceed the scope of the original patent's written description. In re Amos, 953 F.2d 613, 618 (Fed. Cir. 1991).

///

13

Here, Revolution argues the original '207 Patent disclosed only auxiliary frames, and thus does not support Claim 22, which describes a primary frame. (Mot. at 10-11.) In its Invalidity MSJ Order, the Court rejected this argument, finding that the invention disclosed in the '207 Patent encompassed a primary as well as an auxiliary frame. (<u>See</u> Invalidity MSJ Order at 25-26.) The Order quotes several passages from the written description of the '207 Patent that describe the design of a primary frame such as that claimed in Claim 22. (<u>See</u> <u>id.</u>)

Again, Revolution fails to present any arguments not considered in the Invalidity MSJ Order, or to identify any errors in the Court's reasoning. Accordingly, Revolution has failed to establish a likelihood of success on appeal based on invalidity under 35 U.S.C. § 251.

**4. Infringement**

Revolution offers a series of arguments on the subject of infringement, all of which amount to a contention that its primary frames do not infringe Claim 22 because they do not stably support such frames. (<u>See</u> Mot. at 11-15.) Revolution contends the Court erred in finding that Revolution's frames infringed Claim 22 because they were "capable of engaging an auxiliary frame

1  so that lenses of an auxiliary spectacle frame are
2  located in front of the primary lenses." (<u>Id.</u>; <u>see</u>
3  Infringement MSJ Order at 20.)

5       Specifically, Revolution argues that a frame cannot
6  infringe Claim 22 unless it is capable of "stably
7  supporting" a "top-mounted" auxiliary frame, unlike
8  Revolution's frames. (Mot. at 12-15.)  It contends the
9  Court erred by not applying a "shake test" to determine
10 whether its frames "stably supported" a top-mounted
11 frame. (<u>Id.</u>)

13      In its Infringement MSJ Order, the Court found that
14 Revolution had abandoned its argument that Claim 22
15 includes a "stable support" limitation. (Infringement
16 MSJ Order at 20.) Thus, a "shake test" was irrelevant to
17 whether Revolution infringed Claim 22, as long as its
18 frames were capable of supporting a top-mounted auxiliary
19 frame. (<u>Id.</u>)

21      Even assuming Revolution did not expressly abandon
22 this argument, the Court has concluded that the written
23 description is not limited to "stably supported"
24 configurations, and that therefore Claim 22 does not
25 include such a limitation.  <u>See</u>, <u>supra</u> § A.1.  Thus, the
26 Court did not err in refusing to apply a "shake test" to
27 determine if the configuration was "stably supported."
28

15

Accordingly, Revolution has failed to establish a likelihood of success on the merits on its appeal of the summary judgment of infringement.

### 5. Excessiveness of the Judgment

The Court previously has considered and rejected Revolution's contention that the judgment is excessive and not supported by the evidence. (See Remittitur Order.) In its Motion, Revolution presents no new arguments and fails to identify any errors in the Court's reasons for rejecting its arguments. Accordingly, it is unlikely to succeed on appeal on this basis.

### 6. Overall Likelihood of Success

As explained above, Revolution has presented nothing more than a reiteration of the same arguments it raised in previous motions for summary judgment and for remittitur. When faced with such arguments in the context of a motion for stay pending appeal, the Southern District of New York denied the motion, explaining

> the [appellant's] 'strong showing' of success on the merits consists of nothing more than a cursory enumeration of the arguments the defendant plans to raise on appeal. Although the [appellant] claims that these arguments raise important issues of law, it offers not a single case citation to support this claim but instead simply recites certain of its factual contentions with which [the court] disagreed. Under the adversary system, it is counsel's responsibility to explain why these points have legal

16

1 | merit; the Court does not serve as counsel's law clerk.
2 |
3 | Federal Ins. Co. v. County of Westchester, 921 F. Supp.
4 | 1136, 1139 (S.D.N.Y. 1996). Here, as in County of
5 | Westchester, Revolution has offered nothing more than a
6 | "cursory enumeration of the arguments the defendant plans
7 | to raise on appeal." Id. It fails to explain the legal
8 | standard that will be applied to its arguments on appeal,
9 | let alone argue why it has met that standard. See
10 | Endress + Hauser, Inc. v. Hawk Measurement Systems Pty.
11 | Ltd., 932 F. Supp. 1147, 1149 (S.D. Ind. 1996) (holding
12 | that an appellant is not entitled to a stay pending
13 | appeal when it "mere[ly] recit[es] . . . arguments
14 | previously made and rejected").

## B. Irreparable Injury

As Revolution has failed to establish any likelihood of success on the merits, it is not entitled to a stay pending appeal. Id. Additionally, however, Revolution's Motion fails because it has failed to establish irreparable injury.

> To constitute irreparable harm the threatened injury must be, in some way, 'peculiar.' Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. Only harm that the [court] cannot remedy following a final determination on the merits may constitute irreparable harm.

17

American Hospital Ass'n v. Harris, 625 F.2d 1328, 1331 (7th Cir. 1980). Here, Revolution contends that its "business will be destroyed" if the Court fails to stay enforcement of the judgment, but provides no evidence whatsoever to support this contention. (See Mot. at 17.) Accordingly, Revolution has failed to meet its burden of establishing irreparable injury.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Revolution's Motion for Stay of Execution of Judgment Pending Appeal.

Dated: July 14, 2008

VIRGINIA A. PHILLIPS
United States District Judge